# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAZARO AISPURO and GONZALO AISPURO NUNEZ,<br><br>                                    Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.: 18-CV-2045 DMS (KSC)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES (ECF No. 37) AND GRANTING MOTION TO TAX COSTS (ECF No. 38)** |

Before the Court are Plaintiffs' motions for attorney's fees and to tax costs. Defendant Ford Motor Company ("Defendant" or "Ford") filed a response to the motion for attorney's fees, and Plaintiffs filed a reply. For the following reasons, Plaintiffs' motion for attorneys' fees is granted in part and Plaintiffs' motion to tax costs is granted.

## I.
## BACKGROUND

On July 31, 2018, Plaintiffs filed a Complaint in San Diego Superior Court, alleging violations of California's Song-Beverly Consumer Warranty Act ("Song-Beverly" or

1  "Act"). On August 31, 2018, Defendant removed the case to this Court. (ECF No. 1.)
2  Plaintiffs allege that they purchased a new 2015 Ford F-150 for a total purchase price of
3  $52,995.50. (Plaintiff's Mem. & Auth. in Supp. of Mot. for Attorney's Fees ("Mot."), ECF
4  No. 37, at 1.) Plaintiffs allege that within two years of purchasing the vehicle they brought
5  it in for repairs four times to fix serious engine and transmission problems without success.
6  (*See id.*)

7  On January 5, 2018, Plaintiffs sought a buyback from Ford. (Mot. at 4) (citing
8  Mikhov Decl. at ¶ 7.) After Ford failed to respond, Plaintiffs contacted Knight Law for
9  representation and filed the present lawsuit. (*See* Compl., ECF No. 1.) Ford filed its
10 answer denying liability and removed the case to this Court. (*See id.*) On October 15,
11 2018, Plaintiffs' counsel attended an Early Neutral Evaluation ("ENE"). (Mot. at 5.) In
12 October and November 2018, Plaintiffs filed their Initial Disclosures and Joint Report
13 pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. (*Id.*) In December 2018,
14 Defendant propounded requests for production of documents and special interrogatories.
15 (*Id.* at 6.) In January 2019, Plaintiffs drafted and served written discovery on Defendant.
16 (*Id.*)

17 Plaintiffs' counsel also took depositions and conducted inspections in connection
18 with the case between January and October of 2019. (Mot. at 5-6.) Plaintiffs also made
19 two settlement offers during that time. On May 2, 2019, Plaintiffs served Ford with a
20 settlement offer of $121,254.35, and Ford rejected the offer. (Mot. at 7.) Thereafter, on
21 November 22, 2019, Plaintiffs served Ford with a second settlement offer of $132,277,47.
22 (*Id.*) Again, Ford did not accept the offer and made no counter-offer. (*Id.*) Plaintiffs
23 thereafter added counsel from the Wirtz Law Firm to prepare for trial on February 18, 2020.
24 (Mot. at 8.)

25 On January 16, 2020, Plaintiffs accepted Defendant's Rule 68 Offer of Judgment
26 and the case settled for $92,592.26. (*Id.* at 1.) After the parties failed to agree on the
27 amount of attorneys' fees, Plaintiffs filed the present motions.
28 / / /

# II.
# DISCUSSION

A. <u>Motion for Attorney's Fees</u>

State law governs attorneys' fees in cases arising under diversity jurisdiction. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law.")  The general rule for recovery, otherwise known as the "American Rule" is that each party bears their own attorneys' fees. *See Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1257 (2006).  But attorneys' fees may be recoverable by a "prevailing party" if authorized by statute or a contract providing for an award of such fees.

The Song-Beverly Act authorizes "costs and expenses" to prevailing buyers. Cal Civ. Code § 1794(d).  "Costs" include "attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution" of the action. *Id.*  "A prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Goglin v. BMW of North America, LLC.*, 4 Cal. App. 5th 462 (2016).  To meet this burden, a buyer can point to "items on a verified cost bill" as "prima facie evidence" that the listed expenses were "necessarily incurred." *Rappenecker v. Sea-Land Serv., Inc.*, 93 Cal. App. 3d 256, 266 (1979).  The opposing party may object to specific costs, placing the burden on the buyer to demonstrate their necessity. *Id.*

Courts calculate attorneys' fees under § 1794(d) using the "lodestar adjustment method." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 784, 818 (2006).  The lodestar calculation "begins with a touchstone or lodestar, based on careful compilation of the time spent and reasonable hourly compensation of each attorney." *Ketchum v. Moses*, 24 Cal. 4th 1131–32 (2001) (internal quotation marks and citations

omitted). After a court determines the correct lodestar, the court may adjust the number upwards or downwards depending on factors including "(1) the novelty or difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Id.* at 1132. The initial lodestar figure also may be adjusted upward in contingency cases to compensate attorneys for the risk of taking a case in which they may not be compensated. *Id.* at 1132–33.

Here, while Defendant does not dispute that Plaintiffs, as prevailing parties, are entitled to recoup reasonable attorneys' fees, it disagrees on the amount Plaintiffs request. Plaintiffs submitted the following rates and hours to arrive at a lodestar calculation of $51,392.50 for 159.7 hours of work at Knight Law Firm, including drafting the instant motions and time anticipated preparing a reply and attending the hearing: (Ex. A to Mikhov Decl.)

| Name | Position | Law Firm | Avg/Hour | Hours | Amount |
|---|---|---|---|---|---|
| Amy Morse | Partner | Knight | $350.00 | 13.13 | $4,655.00 |
| Chris Urner | Associate | Knight / Altman Law Group | $400.00 | 10.7 | $4,280.00 |
| Deepak Devabose | Associate | Knight | $275.00 | 22.3 | $6,132.50 |
| Daniel Kalinowski | Associate | Knight | $250.00 | 32.1 | $8,025.00 |
| Heidi Alexander | Associate | Knight | $325.00 | 2.3 | $747.50 |
| Kristina Stephenson-Cheang | Associate | Knight | $375.00 | 18.2 | $6,825.00 |
| Maite Colón | Associate | Knight | $300.00 | 13.7 | $4,110.00 |
| Mitchell Rosensweig | Associate | Knight | $325.00 | 21.0 | $6,825.00 |

| Marisa Melero | Associate | Knight | $225.00 | 10.9 | $2,452.50 |
| Russell Higgins | Associate | Knight | $450.00 | 10.2 | $4,590.00 |
| Steve Mikhov | Partner | Knight | $550.00 | 5.0 | $2,750.00 |

Plaintiffs also submitted the following rates and hours to get a lodestar calculation of $4,140 for Wirtz Law. (Ex. A to Wirtz Decl.)

| Name | Position | Law Firm | Hourly Rate | Hours | Total |
| --- | --- | --- | --- | --- | --- |
| Richard M. Wirtz | Managing Attorney | Wirtz | $650.00 | 1.3 | $845.00 |
| Andrea Munoz | Paralegal | Wirtz | $200.00 | 1.2 | $240.00 |
| Rebecca Evans | Paralegal | Wirtz | $200.00 | 11.9 | $2,380.00 |
| Amy Rotman | Senior Attorney | Wirtz | $450.00 | 1.3 | $585.00 |
| Erin K. Barns | Senior Attorney | Wirtz | $450.00 | .2 | $90.00 |

In addition, Plaintiffs request a lodestar enhancement of 0.5, in the amount of $27,766.25 "to account for the delay in payment and contingent risk posed by the case." (Mot. at 10.) The rates and hours and lodestar multiplier are evaluated in turn.

1. Reasonable Hourly Rate

A reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzales v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market in the relevant community.") To determine what is reasonable, courts look to the prevailing market rates in the community served. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The prevailing market rate for attorneys of comparable experience, skill, and reputation controls this determination; however, "[t]hat a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dep't*,

470 F.3d 889, 892 (9th Cir. 2006). "If the party seeking attorneys' fees fails to meet its burden, the court may exercise discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Arias v. Ford Motor Co.*, Case No. EDCV 18-1928 PSG (SPx), 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020).

Here, Plaintiffs' counsel seek hourly rates ranging between $200 and $650. (*See* Mikhov Decl., Ex. A; Wirtz Decl., Ex. A.) To justify these rates, Plaintiffs filed a supporting declaration from Steven Mikhov, Knight Law's Managing Partner, describing the professional experience of the attorneys working on the matter and providing decisions from California state courts and federal courts approving comparable fee awards for each attorney. (*See* Ex. A to Mikhov Decl., at ¶¶ 58–99.) Plaintiffs also provided a supporting declaration from Richard M. Wirtz, that included information about the hourly rates he and other attorneys at his firm regularly receive for similar trials. (*See* Ex. A to Wirtz Decl., at ¶ 12.) In response, Defendant requests that the Court adjust the requested rates in accordance with rates found by the district court in *Arias*, which involved the same Plaintiffs' counsel, the same Defendant, and similar facts arising under the same statute. *See Arias*, 2020 WL 1940843, at *1–4. There, the court awarded the following rates for Plaintiffs' counsel (*see id.* at *4):

| Name | Position | Law Firm | Hourly Rate |
|---|---|---|---|
| Steve Mikhov | Partner | Knight | $325 |
| Amy Morse | Partner | Knight | $325 |
| Richard Wirtz | Partner | Wirtz Law | $325 |
| Russel Higgins | Associate | Knight | $225 |
| Deepak Devabose | Associate | Knight | $225 |
| Daniel Kalinowski | Associate | Knight | $225 |
| Marisa Melero | Associate | Knight | $225 |
| Kristina Stephenson-Cheang | Associate | Knight | $225 |

Not applicable

| Maite Colon | Associate | Knight | $225 |
|---|---|---|---|
| Mitchell Rosensweig | Associate | Knight | $225 |
| Heidi Alexander | Associate | Knight | $225 |
| Christopher Urner | Associate | Knight | $225 |
| Amy Rotman | Associate | Wirtz | $225 |
| Erin K. Barns | Associate | Wirtz | $225 |
| Rebecca Evans | Paralegal | Wirtz | $200 |
| Andrea Munoz | Paralegal | Wirtz | $200 |

In determining the hourly rates, the court in *Arias* used the *2018 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") as a guidepost for determining the reasonableness of hourly rates in the Central District. *See Arias*, 2020 WL 1940843 at *3. The court determined that reasonable hourly rates for partners practicing in this area of law ranged from $254 to $350, associates $205 to $265, and paralegals $120 to $240. *Id.* at *4 (citing Real Rate Report at 44, 14). Using those metrics, the court adjusted the hourly rates for partners to $325 across the board, $225 for associates, and left the paralegal rates "undisturbed." *Id.*

Defendant urges the Court to follow the reasoning in *Arias*, like a number of other district courts have when dealing with similar cases. *See, e.g.*, *DiGoia v. Ford Motor Co.*, No. EDCV 18-1724 JGB (KKx), 2020 WL 1955311, at *3 (C.D. Cal. Apr. 1, 2020) (applying rates adopted by the court in *Arias* to a similar case with the same plaintiffs' counsel and defendant); *Arriaga v. Ford Motor Co.*, No. 18-CV-9089-DSF-KS, ECF No. 36, at 7 (C.D. Cal. May 8, 2020) (same). This case is similar to *Arias*, *DiGoia*, and *Arriaga*. In each of those cases, the plaintiffs were represented by the same attorneys here and brought similar "lemon law" claims against Ford. The only difference is that those actions were litigated in the Central District, rather than the Southern District. But the differences in fees between Los Angeles and San Diego are minor. In *Arias*, the court found that partners in Los Angeles practicing general litigation had hourly rates ranging from $220 to

$715, and associates had hourly rates ranging from $175 to $425. *See* 2020 WL 1940843, at *4 (citing Real Rate Report at 87). In contrast, in San Diego, associates have hourly rates ranging from $150 to $180. *See* Real Rate Report at 88. The Real Rate Report does not provide hourly rates for partners in San Diego, but shows partners practicing consumer litigation generally have hourly rates ranging from $300 to $625. *See id.* at 14.

Plaintiffs urge the Court to award fees in line with the cases they highlight, rather than those set out in the Real Rate Report. However, the Real Rate Report is "a much better reflection of true market rates than self-reported rates[.]" *See Hicks v. Toys 'R' Us-Delaware, Inc.*, No. CV 13-1302-DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014); *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex. Rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y 2012) (same). Of the cases highlighted by Plaintiffs for the Southern District, the hourly rates range from $350 to $640 for partners and $200 to $350 for associates. (*See id.*) The Court will grant $350 per hour for partners, which is in line with the Report's range of $300 to $625 and at the low end of Plaintiffs' request. Because the range of reasonable rates for associates in San Diego is $150 to $180, and the range for associates practicing in consumer goods cases is between $205 and $265, the Court will award $225 for associates, which is in line with the rates awarded in *Arias*. Lastly, the Court will award $200 for paralegals, as requested by both parties.

2. <u>Reasonable Hours Expended</u>

An attorneys' fee award includes compensation for all hours reasonably expended in the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). As noted, the moving party has the burden to show that a request for attorney fees is reasonable.

Plaintiffs contend the fees they request are reasonable considering the nature and complexity of the litigation and the firms' skill in litigating these types of actions. (Mot. at 12-17.) Defendant contends the fees are unreasonable because Plaintiffs' counsel: (1) billed unreasonable hours for the present motions; (2) included unnecessary and redundant billing; (3) included "suspect time entries"; (4) included time entries for "inflated and clerical tasks"; and (5) included block-billed time entries.

### A. Billings for Motions

Defendant contends Plaintiffs' counsel's hours are unreasonable for the instant motions because they bill for future events and unrecoverable administrative tasks and the motions are duplicative of other filings in related actions. First, Defendant points out that of the 16.1 hours (9% of the total litigation) billed for the present motions, 8.6 hours are for future events. (Opp'n at 12-13.) Plaintiffs, however, replaced these "anticipated" expenses with actual hours expended in their Reply Brief, noting Deepak Devabose spent 1.3 hours reviewing Ford's opposition and 3.8 hours drafting and revising Plaintiffs' reply and evidentiary objections, totaling 5.1. (Ex. 2 to Reply Br. at ¶ 5.) Plaintiffs also estimated one hour for a hearing. (*See id.*) Because the matter was taken on the briefs by the Court without a hearing, the Court will adjust the hours for the present motion to 5.1 hours.

Next, Defendant contends Plaintiffs' motion includes an entry related to "unrecoverable administrative tasks," including .9 hours (.7 hours from Steve Mikhov and .2 hours from Erin Barns) to "review and audit billing" in preparation for the motion. Defendant urges the Court follow the example of *Jameson v. Ford Motor Co.*, where the district court struck fees for "review and audit billing." *See* No. 18-CV-1952 ODW (AS), 2019 WL 6840758, at *3 (C.D. Cal. Dec. 16, 2019). Plaintiffs do not respond to this assertion. Accordingly, the Court will subtract the .9 hours for "review and audit billing."

Finally, Defendant notes Plaintiffs' motion and supporting documents "are cookie-cutter templates, and the time spent on 'preparing' these templates is excessive." (Opp'n at 14.) Defendant notes many of the passages from Plaintiffs' motion and related

declarations appear to be cut-and-pasted from earlier iterations of filings in similar cases. (*See id.*) Defendant argues the Court should award Plaintiffs no more than 6.6 hours for the revisions to their template motions. (*Id.*) Plaintiffs raise evidentiary objections to Defendant's characterizations. (See. Ex. 1 to Reply Br.) Notwithstanding the similarity of the motions, the Court declines to find that that the 11.7 hours spent preparing the present motions, reading Defendant's oppositions, and preparing their reply brief are excessive. *But see Holcomb v. BMW of North America, LLC.*, No. 18cv475 JM (BGS), 2020 WL 759285, at *6 (S.D. Cal. Feb. 14, 2020) (finding 41.4 hours in preparing Motion for Attorney's Fees excessive); *Pollard v. FCA*, No. 17-cv-591-JLS-JCG, 2020 WL 57270, at *5 (C.D. Cal. Jan. 3, 2020) (finding 14.5 hours spent on a motion for attorneys' fees unreasonable under the Song-Beverly Act because it was substantially identical to an earlier motion). Accordingly, the Court will not subtract any of the time requested for the present motions.

### B. "Inefficient, Unnecessary, and Redundant" Billing

Next, Defendant contends the Court should exclude "inefficient, unnecessary, and redundant" time billings for similar tasks performed by multiple attorneys, including Daniel Kalinowski billing 10.5 hours for reviewing memoranda, transcripts, and summaries for depositions attended by other attorneys, as well as multiple attorneys billing time for preparing and reviewing memoranda for depositions, preparing for ENE statements, and other tasks. (Opp'n at 14-16.) Overall, Defendant contends this case was "overstaffed with *sixteen timekeepers across three law firms* who billed for reviewing memoranda and communicating with each other regarding run of the mill issues." (*Id.* at 17) (emphasis in original.) Defendant argues the Court should exclude this time as "excessive, redundant, or otherwise unnecessary." (*Id.* at 17.) Defendant cites *Gates v. Deukemejian*, where the Ninth Circuit recognized that when awarding fees, courts:

> should exclude from this initial fee calculation hours that were not reasonably expended. Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should exclude from a fee

> request hours that are excessive redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude hours from his fee submission.

987 F. 2d 1392, 1397 (9th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In response, Plaintiffs contend the use of multiple attorneys on this case was reasonable, and there is no evidence of "over conferencing, attorney stacking (multiple attorneys at court functions), and excessive research." (Reply Br. at 5-6) (quoting *Donahue v. Donahue*, 182 Cal. App. 4th 259, 272 (2010)). Moreover, Plaintiffs contend that Knight Law's strategy was to "place[] the bulk of the work on younger attorneys, with senior attorneys providing supervision and litigation strategy," leading to overall cost-savings due to the lower rate at which younger attorneys bill. (Reply Br. at 7.) Defendant, however, also notes Ms. Stephenson-Cheang billed .2 hours to "review a memorandum of Thomas Lepper's deposition," although Thomas Lepper was not an expert who was deposed in this case. (Opp'n at 16.) While Plaintiffs do not provide an adequate response to Ms. Stephenson-Cheang's .2 hours, they adequately demonstrate the other hours incurred are reasonable. Accordingly, .2 hours will be deducted.

### C. Suspect Time Entries

Next, Defendant requests the Court remove "suspect" time entries, including 2.1 hours billed by Steve Mikhov that are "unsubstantiated by date." (Opp'n at 17.) Defendant contends that the absence of a date for the entry should preclude an award because Plaintiffs have not demonstrated the "actual time expended … in connection with the commencement and prosecution" of the action. (*Id.* at 18) (citing Cal. Civ. Code § 1794(d)). Defendant points to several cases in which district courts have denied recovery for dateless entries. (*See id.* at 18.)

Plaintiffs note "these entries, though not dated, are attested to as actual time expended on the case and were obviously incurred shortly prior to the filing of Plaintiffs' Complaint on July 31, 2018." (Reply Br. at 7.) The Court agrees with Defendant. "By

failing to identify *when* Mr. Mikhov performed the work, [p]laintiff[s] have failed to meet [their] burden of sufficiently 'documenting the hours expended in the litigation." *See Arriaga*, at 10 (citing *Welch v. Metro, Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)).

### D. "Inflated and Clerical" Tasks

Next, Defendant requests the Court exclude 5.4 hours of "clerical tasks that were billed by partners and associates with excessive hourly rates." (Opp'n at 18.) Defendant argues it was unreasonable that "some of Knight Law Group's highest billing associates and a partner billed for preparing, reviewing, and objecting to notices of deposition." (*Id.* at 19.) Defendant contends these tasks could have been performed by "non-billing staff." (*Id.*)

In response, Plaintiffs contend these tasks were not "clerical" tasks but were actually "discrete and substantive task[s] that advanced Plaintiffs' interests, contributed to the successful outcome, and should be awarded in full." (Reply Br. at 8.) Moreover, Plaintiffs contend that each attorney only billed between .1 and .2 hours for each deposition notice or set of objections drafted. (*Id.*) The Court finds the time incurred for these tasks is reasonable. Moreover, Defendant's concerns regarding inflated fees are adequately addressed above by the decrease in the lodestar amount.

### E. Block-Billing

Lastly, Defendant contends the Court should reduce Plaintiffs' block-billed time entries. (Opp'n at 20.) "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir. 1996)) (internal quotation marks omitted). Defendant contends Plaintiffs included block-billing for Mitchell Rosensweig, such as 9.1 hours to "attend Early Neutral Evaluation Conference and CMC (travel included); draft results." (Opp'n at 20) (citing Mikhov Decl., ¶ 2.) Other examples highlighted by defendants include billings that state "draft results," "draft memorandum," "prepare memoranda re: depositions," and

"review Early Neutral Evaluation Conference and CMC results." (*Id.* at 21.) In response, Plaintiffs contend these entries are not block-billed, but rather "reflect time expended on specific tasks." (Reply Br. at 9.) Although it is preferable to be more precise in setting out billing tasks, the entries at issue reflect "time expended on specific tasks," rather than "the total daily time spent working on a case." *See Welch*, 480 F.3d at 945 n.2. Accordingly, the Court will not reduce fees based on block-billing.

      3. <u>Lodestar Multiplier</u>

Finally, Plaintiffs contend a lodestar multiplier of 0.5 is appropriate. (Mot. at 17-18.) To determine whether a lodestar multiplier should be awarded, courts consider: (1) the complexity of the case and procedural demands, (2) the skill exhibited and results achieved, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. *See Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24, 34 (2019).

Plaintiffs argue a 0.5 multiplier is appropriate due to the "risk of taking this case on a contingent fee basis and the delay in payment since July 2018, as well as the excellent result achieved." (Mot. at 19.) According to Plaintiffs, the multiplier is also appropriate because "the result obtained in this case is indisputably rare and exceptional," and Plaintiffs "overcame Ford's stonewalling of Plaintiffs' repurchase request and over a year and a half of litigation headwinds created by Ford to earn an exceptional $92,592.26 settlement." (Reply Br. at 10.) Defendant contends the lodestar enhancement is unwarranted because there is no evidence that the "issues presented in this litigation were novel or complex," "no evidence that Plaintiffs' counsel displayed any exceptional skill in presenting these run-of-the-mill issues," and "little to no contingent risk" because the Song Beverly Act provides for fees to the prevailing party. (Opp'n at 23.)

The Court agrees with Defendant. The issues in the case were straightforward and counsels' experience with these types of cases served them well, making the litigation relatively routine. There was also no evidence that the litigation precluded other work opportunities for counsel. Moreover, the risk to counsel for taking the case on contingency

was reduced because of the possibility of recovering statutory fees. *See Weeks*, 63 Cal. App. 4th at 1174 (stating risk that attorneys "would not be compensated for their work was no greater than the risk of loss inherent in any contingent fee case … because … the availability of statutory fees [made] the possibility of receiving full compensation for litigating the case … greater than that inherent in most contingency fee actions.") Because these factors weigh against Plaintiffs' request, (*Morris* , 41 Cal. App. 5th at 34), the loadstar enhancement is denied.

B. Motion for Taxation of Costs

Plaintiffs request costs and expenses under the Song-Beverly Act, rather than under federal law. (Mot. for Costs, ECF No. 38, at 1.)  The distinction is important because the former allows for recovery of retained expert witness fees while the latter does not. Defendant did not file an opposition to the motion.

Under federal law, costs available to the prevailing party are limited to those listed in 28 U.S.C. § 1920. Fed. R. Civ. P. 54(d); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).  The recovery of costs in federal court is generally governed by Federal Rule of Civil Procedure 54(d). *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003).  However, where a claim for reimbursement of costs arises under state law, state law may determine costs. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 (9th Cir. 2003).  In *Clausen*, the Ninth Circuit held the Oregon Oil Spill Act's cost provision was substantive in nature, rather than procedural, and accordingly affirmed the district court's decision to award costs under Oregon state law, rather than federal law. *Id.* at 1064–66.  The court reasoned that the Oregon Legislature's decision to craft a statute that included costs and expenses as part of a prevailing plaintiff's damages was an "express indication" of the Legislature's "special interest in providing litigants with full compensation for reasonable sums expended in an Oil Spill Act claim." *Id.* at 1065 (internal quotation marks and citations omitted).

Several courts within this district have found that under *Clausen*, the expense-recovery provisions of the Song-Beverly Act are substantive, and therefore awarded costs

and expenses under § 1794(d).  *See, e.g.*, *Hellenberg v. Ford Motor Co.*, No. 18-cv-2202 JM (KSC), 2020 WL 180126, at *6–7 (S.D. Cal. Apr. 10, 2020) (Miller, J.) (holding that Song-Beverly Act controls awards of costs and expenses); *Holcomb v. BMW of North America, LLC.*, 2020 WL 759285, at *8 (same); *Petropoulos v. FCA US LLC*, No. 17-CV-0389 W (KSC), 2019 WL 2289399, at *4 (S.D. Cal. May 29, 2019) (Whelan, J.) (concluding federal law and Local Rules do not govern award of costs incurred after removal based on *Erie* and *Clausen*).  Other district courts disagree.  *See, e.g.*, *Pollard et al. v. FCA US LLC*, 17-cv-591-JLS-JCG, 2020 WL 57270, at *7 (C.D. Cal. Jan. 3, 2020) (discussing intra-Circuit split and concluding the Song-Beverly Act's costs provision "does not fall under the *Clausen* exception, rendering federal procedural law, rather than state substantive law, applicable to [p]laintiffs' request for costs); *Johnson v. FCA US LLC*, 17-cv-0536-AJB-BGS, 2019 WL 3891148, at *4 (S.D. Cal. Aug. 16, 2019) (Battaglia, J.) ("In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases.")

The district courts that follow *Clausen* have concluded that, like the Oregon Legislature in the Oregon Oil Spill Act, the California Legislature has demonstrated a similar "special interest" in permitting plaintiffs under the Song-Beverly Act to recover costs and expenses under § 1794(d).  *See Forouzan v. BMW of North America, LLC.*, 390 F. Supp. 3d 1184, 1187 (C.D. Cal. 2019) ("By permitting prevailing buyers to recover … costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible.") (internal quotation marks and citations omitted).

Under the Song-Beverly Act, Plaintiffs seek recovery of all their costs and expenses.  The Court agrees with *Hellenberg*, *Holcomb*, and *Petropoulos*, and finds the recovery of costs and expenses are governed by § 1794(d) of the Song-Beverly Act.  While expert witness fees are compensable only for "court appointed experts" under 28 U.S.C. § 1920, they are generally recoverable for experts—including retained experts—under the Song-Beverly Act.  Defendant does not argue otherwise.  Plaintiffs provided an itemized cost bill

for $21,730.93, including $435 for fees of the clerk, $920 for fees for service of summons and subpoena, $144 for fees for witnesses, and $20,231.93 in "other costs." (Ex. A to Mikhov Decl., ECF No. 38-2.) In "Other costs," Plaintiffs include $5,835.62 in deposition costs, $14,040.24 in expert witness costs, $141.16 in attorney services and messenger court filing fees, $22.49 for overnight courier for service of documents, and $192.42 for travel. These costs and expenses were "reasonably incurred by Plaintiffs "in connection with the commencement and prosecution of the [present] action." *See* Cal. Civ. Code § 1794(d). Accordingly, Plaintiffs' motion to tax costs and expenses is granted.

## III.
## CONCLUSION AND ORDER

After adjusting the hourly rates, hours expended, and denying Plaintiffs' request for a lodestar multiplier, the Court orders payment of the following attorneys' fees, totaling $39,775.

| Name | Position | Law Firm | Adjusted Hourly Rate | Adjusted Hours | Adjusted Total |
|---|---|---|---|---|---|
| Steve Mikhov | Partner | Knight | $350 | 2.2 | $770 |
| Amy Morse | Partner | Knight | $350 | 13.3 | $4,655 |
| Richard Wirtz | Partner | Wirtz Law | $350 | 1.3 | $455 |
| Russel Higgins | Associate | Knight | $225 | 10.2 | $2,295 |
| Deepak Devabose | Associate | Knight | $225 | 18.8 | $4,230 |
| Daniel Kalinowski | Associate | Knight | $225 | 32.1 | $7,222.50 |
| Marisa Melero | Associate | Knight | $225 | 10.9 | $2452.50 |
| Kristina Stephenson-Cheang | Associate | Knight | $225 | 18.0 | $4,050 |
| Maite Colon | Associate | Knight | $225 | 13.7 | $3,082.50 |

| | | | | | |
|---|---|---|---|---|---|
| Mitchell Rosensweig | Associate | Knight | $225 | 21.0 | $4,725.00 |
| Heidi Alexander | Associate | Knight | $225 | 2.3 | $517.50 |
| Christopher Urner | Associate | Knight | $225 | 10.7 | $2,407.50 |
| Amy Rotman | Associate | Wirtz | $225 | 1.3 | $292.50 |
| Erin K. Barns | Associate | Wirtz | $225 | 0 | 0 |
| Rebecca Evans | Paralegal | Wirtz | $200 | 11.9 | $2,380 |
| Andrea Munoz | Paralegal | Wirtz | $200 | 1.2 | $240 |

The Court also awards Plaintiffs' costs and expenses totaling $21,730.93.

**IT IS SO ORDERED.**

Dated:  August 10, 2020

Hon. Dana M. Sabraw
United States District Judge